No. 23-3512

# In the United States Court of Appeals for the Sixth Circuit

EMPLOYEES RETIREMENT SYSTEM OF THE CITY OF ST. LOUIS, Derivatively on behalf of FirstEnergy Corp.; ELECTRICAL WORKERS PENSION FUND, LOCAL 103, I.B.E.W., Co-Lead Plaintiff - Case No. 2:20-cv-5128; MASSACHUSETTS LABORERS PENSION FUND, Derivatively on Behalf of FirstEnergy Corp. Case No. 2:20-cv-5237; CITY OF PHILADELPHIA BOARD OF PENSIONS AND RETIREMENT; ROBERTA BLOOM; JOAN RANDELL; ARLENE POGOLOWITZ; JAMES ATHERTON
*Plaintiffs-Appellees*

TODD AUGENBAUM
*Objector-Appellant*

v.

CHARLES E. JONES; MICHAEL J. ANDERSON; STEVEN J. DEMETRIOU; JULIA L. JOHNSON; DONALD T. MISHEFF; THOMAS N. MITCHELL; JAMES F. O'NEIL, III; CHRISTOPHER D. PAPPAS; SANDRA PIANALTO; LUIS A. REYES; LESLIE M. TURNER; PAUL T. ADDISON; JERRY SUE THORNTON; WILLIAM T. COTTLE; GEORGE M. SMART; JUSTIN BILTZ; MICHAEL DOWLING; JAMES F. PEARSON; STEVEN E. STRAH; K. JON TAYLOR; ROBERT P. REFFNER; EBONY YEBOAH-AMANKWAH; FIRSTENERGY CORPORATION; JOHN DOES, 1-50
*Defendants-Appellees*

**Appeal from the United States District Court, Southern District of Ohio at Columbus, Case No. 2:20-cv-04813, Hon. Algenon L. Marbley**

**OPENING BRIEF OF APPELLANT TODD AUGENBAUM**

W. B. MARKOVITS
MARKOVITS, STOCK &
    DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, Ohio 45209
(513) 651-3700 – Telephone
(513) 665-0219 – Facsimile
E-mail: BMarkovits@msdlegal.com

JEFFREY S. ABRAHAM
MICHAEL J. KLEIN
ABRAHAM, FRUCHTER &
    TWERSKY, LLP
450 Seventh Avenue, 38th Floor
New York, NY 10123
(212) 279-5050 – Telephone
(212) 279-3655 – Facsimile
E-mail: jabraham@aftlaw.com
E-mail: mklein@aftlaw.com

*Counsel for Appellant Todd Augenbaum*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................. i

TABLE OF AUTHORITIES ......................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ...............................1

STATEMENT OF JURISDICTION.................................................1

ISSUES PRESENTED.................................................................1

STATEMENT OF THE CASE.......................................................3

    A.    The Legislative Corruption Scandal.......................................3

    B.    The First Shareholder Derivative Action is Filed in the Northern District of Ohio Followed by the Filing of Actions in the Southern District of Ohio .......................................................3

    C.    The Action is Litigated in Both the Southern District and the Northern District.................................................................4

    D.    The Northern District Reacts Adversely to the Parties' Efforts to Settle the Action Given the Incompleteness of Discovery ..................7

    E.    The Parties Fail to Respond to Judge Adams' Concerns and, Instead, Engineer a Settlement Designed to be Binding on the Northern District Once Approved by the Southern District ................8

    F.    The Settlement Proceedings in the Southern District Reveal a Previously Undisclosed Fact Concerning the Settlement's True Monetary Benefit to FirstEnergy.......................................10

    G.    The Southern District Approves the Settlement Overruling Augenbaum's Objections ..................................................11

    H.    Other Relevant Developments .............................................13

SUMMARY OF ARGUMENT .....................................................14

ARGUMENT .........................................................................15

i

I.    THIS COURT SHOULD ANALYZE THE DISTRICT COURT'S APPROVAL OF THE SETTLEMENT UNDER A *DE NOVO* STANDARD ................................................... 15

II.    THE SETTLEMENT SHOULD BE VACATED BECAUSE THE PARTIES DELIBERATELY REFUSED TO SEEK APPROVAL FROM THE NORTHERN DISTRICT ....................... 16

III.   THE NOTICE FAILED TO COMPLY WITH DUE PROCESS REQUIREMENTS THEREBY PRECLUDING THE SETTLEMENT'S APPROVAL ....................................... 20

IV.   THE SETTLEMENT SHOULD NOT HAVE BEEN APPROVED ...................................................... 26

V.    NEWLY REVEALED FACTS FURTHER DEMONSTRATE THAT THE SETTLEMENT SHOULD NOT HAVE BEEN APPROVED ...................................................... 31

    A.    The Court's Finding of Another Potential Major Recovery from the Terminated Executives is Inconsistent with Facts the SLC Belatedly Disclosed ................................... 31

    B.    The Parties' Failed to Inform This Court of Facts Relevant to the Claims Asserted Against Strah Released in the Settlement ................................................. 33

VI.   ANY ATTORNEYS' FEES AWARDED SHOULD BE REDUCED TO REFLECT THE ACTUAL BENEFITS ACHIEVED ...................................................... 34

CONCLUSION ................................................................. 36

CERTIFICATE OF COMPLIANCE .............................................. 37

CERTIFICATE OF SERVICE .................................................. 38

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ............. 41

# TABLE OF AUTHORITIES

**Cases**

*Bondali v. Yum! Brands, Inc.*,
   620 F. App'x 483 (6th Cir. 2015)...................................................26

*Class v. U.S.,*
   138 S. Ct. 798 (2018)...................................................................29

*Connectivity Sys. Inc. v. Nat'l City Bank*,
   2011 WL 292008 (S.D. Ohio Jan. 26, 2011)..................................30

*Emps. Ret. Sys. of City of St. Louis v. Jones*,
   2021 WL 1890490 (S.D. Ohio May 11, 2021)...................................9

*Fidel v. Farley*,
   534 F.3d 508 (6th Cir. 2008) ........................................................19

*Howell v. JBI, Inc.*,
   298 F.R.D. 649 (D. Nev. 2014) .....................................................27

*In re Bluetooth Headset Products Liability Litig.*,
   654 F.3d 935 (9th Cir. 2011) .........................................................31

*In re Cardinal Health Inc. Sec. Litig.*,
   528 F. Supp. 2d 752 (S.D. Ohio 2007)...........................................37

*In re Caremark Int'l Inc. Derivative Litig.*,
   698 A.2d 959 (Del. Ch. 1996) .......................................................37

*In re Dry Max Pampers Litig.*,
   724 F.3d 713 (6th Cir. 2013) ........................................... 19, 29, 31

*In re Katrina Canal Breaches Litig.*,
   628 F.3d 185 (5th Cir. 2010) .........................................................28

*In re Polyurethane Foam Antitrust Litig.*,
   168 F. Supp.3d 985 (N.D. Ohio 2016) ...........................................27

*In re UnumProvident Corp. Deriv. Litig.*,
   2010 WL 289179 (E.D. Tenn. Jan. 20, 2010) .................................31

*Int'l Union, UAW v. Gen. Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007) ..........................................................25

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)............................................................................24

*Nat'l Ecological Found. v. Alexander*,
   496 F.3d 466 (6th Cir. 2007) ..........................................................28

*Pierce v. Underwood*,
   487 U.S. 552 (1988).............................................................................19

*Ramey v. Cincinnati Enquirer, Inc.*,
   508 F.2d 1188 (6th Cir. 1974) ........................................................37

*Rikos v. Proctor & Gamble Co.*,
   2018 WL 2009681 (S.D. Ohio Apr. 30, 2018)..............................30

*Rudi v. Wexner*,
   2022 WL 1682297 (S.D. Ohio May 16, 2022)) ............................30

*Set Cap. LLC v. Credit Suisse Grp. AG*,
   996 F.3d 64 (2d Cir. 2021) ...............................................................26

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ...........................................................30

*U.S. v. Olano*,
   507 U.S. 725 (1993).............................................................................29

*Venters v. City of Delphi*,
   123 F.3d 956 (7th Cir. 1997) ...........................................................28

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*,
   16 F. App'x 433 (6th Cir. 2001)......................................................21

## Statutes, Rules, and Regulations

15 U.S.C. §78n(a) ......................................................................................6

Fed R. Civ. P. 23.1(c)........................................................................ 20, 24

## Other Authorities

Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d §1839 .................24

iv

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Todd Augenbaum requests oral argument.

## STATEMENT OF JURISDICTION

Jurisdiction is undisputed. The lower court found that the operative complaint (Consolidated Complaint, R.75, PAGEID # 881-1003) states a plausible claim for violation of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78n(a), in denying Defendants' motion to dismiss. Opinion & Order, R.93, PAGEID # 1280-1312. The lower court also found that it had supplemental jurisdiction over the remaining claims, which are pled pursuant to Ohio law and share a predicate with the federal claim. Opinion & Order, R.93, PAGEID # 1302.

The lower court entered judgment approving the Settlement and dismissing the case on August 23, 2022. Final Judgment, R.196, PAGEID # 5074-5085. Appellant filed a timely motion for reconsideration on September 20, 2022 (Motion, R.197, PAGEID # 5086-5087) which was denied on May 22, 2023.  Opinion & Order, R.205, PAGEID #6147-6154.  Appellant filed a timely notice of appeal on June 15, 2023.  Notice of Appeal, R.206, PAGEID # 6155-6156.

## ISSUES PRESENTED

1.    Whether this Court should apply the *de novo* standard to review the District Court's approval of the Settlement given that Judge Adams of the U.S. District Court for the Northern District of Ohio (the "Northern District"), before

1

whom a parallel case was being simultaneously litigated, expressed specific concerns and skepticism with respect to the timing and terms of the Settlement?

2.     Whether the Parties were free to entirely circumvent obtaining approval of the Settlement in the first-filed case asserting shareholder derivative claims on behalf of FirstEnergy Corporation's ("FirstEnergy" or the "Company") which was pending and being actively litigated before Judge Adams?

3.     Whether the notice (the "Notice") provided to FirstEnergy shareholders of the Settlement satisfies the requirements of the Due Process clause of the U.S. Constitution given its failure to explain that the headline number of $180 million of insurance proceeds to the Company consists primarily of funds from policies that would otherwise be available to (and almost certainly used by) the Company absent settlement of the shareholder derivative claims?

4.     Whether the settlement of FirstEnergy's derivative claims is fair, reasonable, and adequate in, among other things, releasing the Company's non-compensation related claims against several former executives terminated for wrongdoing while allowing those fiduciaries to maintain claims against the Company?

5.     Whether, assuming the Settlement of FirstEnergy's derivative claims is fair, reasonable, and adequate, the attorneys' fees granted by the Court were excessive given the actual benefit to the Company?

## STATEMENT OF THE CASE

### A.    The Legislative Corruption Scandal

FirstEnergy, led by then-Chief Executive Officer Charles E. Jones ("Jones") "implement[ed] a massive, years-long bribery, racketeering and pay-to-play scheme to procure favorable legislation from the Ohio Speaker of the House, Larry Householder ('Householder')" (the "Legislative Corruption Scandal"). Complaint, R.75, PAGEID# 888, ¶1.[1] The Legislative Corruption Scandal was "likely the largest bribery, money laundering scheme ever perpetrated against the people of the state of Ohio." Complaint, R.75, PAGEID# 890-891, ¶7.

On July 17, 2020, the U.S. Attorney for the Southern District of Ohio filed an 80-page criminal complaint with an FBI affidavit detailing the government's allegations against Householder and others. *Id.* It was immediately clear that FirstEnergy was at the center of the Legislative Corruption Scandal and was referred to as "Company A" in the criminal complaint. *Id.*

### B.    The First Shareholder Derivative Action is Filed in the Northern District of Ohio Followed by the Filing of Actions in the Southern District of Ohio

On August 7, 2020, the first shareholder derivative action on behalf of FirstEnergy relating to the Legislative Corruption Scandal was filed in the Northern District. *See Miller ex rel. FirstEnergy Corp. v. Anderson*, 5:20-cv-01743 (N.D.

---

[1]    General familiarity with the Legislative Corruption Scandal is assumed.

Ohio) (the "Northern District Action" or "*Miller*"), Complaint, R.1, PAGEID # 1-32. On September 9, 2020, a related action was filed in the U.S. District Court for the Southern District of Ohio. *See* Complaint, R.1, PAGEID # 1-124 (filed in *Employees Retirement Sys. of the City of St. Louis ex rel. FirstEnergy Corp. v. Jones,* 2:20-cv-04813-ALM-KAJ (S.D. Ohio) (the "Southern District Action")).

On October 1, 2020, plaintiffs in the Southern District Action moved to intervene in the Northern District for the purposes of transferring that action to the Southern District. *Miller*, 5:20-cv-01743 (N.D. Ohio), Motion, R.17, PAGEID # 159-163. On October 30, 2020, Defendants filed a motion to dismiss the Northern District Action. *Miller*, 5:20-cv-01743 (N.D. Ohio), Motion, R.44, PAGEID # 944-947. On November 16, 2020, the Southern District consolidated the various shareholder derivative actions filed in that Court and appointed co-lead counsel. Opinion and Order, R.44, PAGEID # 688-708.

### C.    The Action is Litigated in Both the Southern District and the Northern District

On December 21, 2020, Judge Marbley denied Defendants' motion to stay the Southern District Action in favor of the Northern District Action. Opinion & Order, R.59, PAGEID # 792-800. On January 25, 2021, the Plaintiffs in the Southern District Action filed an amended complaint alleging, among other things, that the Company's officers were "motivated to engage in the [Legislative Corruption Scandal] because it increased the amount of their performance-based compensation

tied to the achievement of certain FirstEnergy financial targets. Complaint, R.75, PAGEID # 919-920, ¶81. On May 11, 2021, Judge Marbley denied motions to dismiss filed in the Southern District Action. *Emps. Ret. Sys. of City of St. Louis v. Jones*, 2021 WL 1890490 (S.D. Ohio May 11, 2021); *see also* Opinion & Order, R.93, PAGEID # 1269-1312.

On May 13, 2021, the Northern District granted the Southern District plaintiffs' intervention motion while denying their motion to transfer the case to the Southern District, stating that:

> While it is not ideal that matters will apparently remain pending and active in both Districts, the Court is hopeful that permitting intervention in this matter will ensure that the arguments presented in both Districts will be united, thereby reducing any possibility of conflicting decisions.

*Miller*, 5:20-cv-01743 (N.D. Ohio), Opinion and decision, R.72, PAGEID # 1494. On June 3, 2021, the Southern District plaintiffs filed a complaint-in-intervention in the Northern District Action. *Miller*, 5:20-cv-01743 (N.D. Ohio), Intervenors' Complaint, R.75, PAGEID # 1547-1672.

On July 20, 2021, FirstEnergy entered into a deferred prosecution agreement ("DPA") with the U.S. Attorney for the Southern District of Ohio. In the DPA, FirstEnergy admitted that it, "through the acts of its officers, employees, and agents, conspired with public officials and entities to pay millions of dollars to and for the benefit of public officials in exchange for specific official action for FirstEnergy

Corp.'s    benefit."    S*ee*    https://www.sec.gov/Archives/edgar/data/1031296/
000103129621000071/ex101-8k7x22x21.htm (cited in Objection to Settlement,
R.181, PAGEID # 4031, n.12). The DPA contains nearly 30 pages of facts that
FirstEnergy agreed would be proven beyond a reasonable doubt if the prosecution
moved forward. *See Miller*, 5:20-cv-01743 (N.D. Ohio), Order, R.290, PAGEID #
4024-4025; *see also* DPA at Attachment A (pp.15-46).

On September 16, 2021, the Northen District denied Defendants' motions to
dismiss and denied a motion to stay made by a special litigation committee (the
"SLC") of the Company's board of directors (the "Board"). *Miller*, 5:20-cv-01743
(N.D. Ohio), Opinion and Decision, R.117, PAGEID # 2131-2133. On November
16, 2021, at an in-person status conference, the Northern District Court informed the
parties that it "intend[ed] on moving this case in an expeditious way." *Miller*, 5:20-
cv-01743 (N.D. Ohio), Transcript, R.166, PAGEID # 3115 at 3:10 (quoted at *Miller*,
5:20-cv-01743 (N.D. Ohio), Order, R.290, PAGEID # 4025). Judge Adams made
space in the federal courthouse available for depositions and Plaintiffs provided a
schedule of 22 depositions scheduled to begin on February 10, 2022. *Miller*, 5:20-
cv-01743 (N.D. Ohio), Order, R.290, PAGEID # 4025.

The Parties never sought the assistance of this Court in requiring that the case
be litigated in a single District. In contrast, the SLC sought interlocutory review of

the Orders denying its motion to temporarily stay the litigation. *See Emps. Ret. Sys. of City of St. Louis v. Jones*, Docket No. 21-03993 (6th Cir.).

**D.    The Northern District Reacts Adversely to the Parties' Efforts to Settle the Action Given the Incompleteness of Discovery**

On February 10, 2022 – the same day depositions were set to begin – instead of moving forward with discovery, the Parties sought to stay proceedings in the Northern District. *Miller*, 5:20-cv-01743 (N.D. Ohio), Joint Motion, R.273, PAGEID # 3811-3821. Their joint motion to stay disclosed that all parties to the Northern District Action, the Southern District Action, and a parallel state court proceeding had reached an agreement in principle to settle each of the cases and were negotiating the terms of a final agreement. *Id.*, PAGEID # 3812-3814, ¶¶4, 7. The Parties asked the Court to stay the Northern District Action while they moved forward with the Settlement which would be approved by the Southern District without requiring approval by the Northen District. *Id.*, PAGEID # 3813-3814, ¶7.

On February 11, 2023, the Northern District denied the motion to stay with prejudice stating, *inter alia*, that:

> The parties have reached a proposed settlement agreement despite the following:
>
> ▪ **incomplete written discovery**
>
> ▪ **no testimony under oath from any Defendant or other witness**
>
> ▪ **incomplete privilege logs detailing withheld documentation**

7

▪ **an incomplete forensic examination to identify possible missing communications contained on Defendant Charles Jones' personal electronic devices and**

▪ **an inadequate period to review and analyze the documents that were provided.**

*Miller*, 5:20-cv-01743 (N.D. Ohio), Opinion and Decision, R.274, PAGEID # 3904 (emphasis in original). Judge Adams also found that the parties "appear to engage in forum shopping" by only seeking approval of their settlement in the Southern District Action and ordered the parties to provide additional information with respect to eleven specific factual inquiries by the Court. *Id.* at PAGEID # 3905-3907.

### E. The Parties Fail to Respond to Judge Adams' Concerns and, Instead, Engineer a Settlement Designed to be Binding on the Northern District Once Approved by the Southern District

The parties refused to provide complete responses to Judge Adams' inquiries, largely claiming a mediation privilege. *Miller*, 5:20-cv-01743 (N.D. Ohio), Plaintiffs' Response to Order, R.276, PAGEID # 3911-3922; *Miller*, 5:20-cv-01743 (N.D. Ohio), Special Litigation Committee's Response to Order, R.277, PAGEID # 3929-3933. On March 22, 2022, Judge Adams issued an Order finding that the parties' failure to respond to the Court's inquiries based upon the assertion of various testimonial privileges lacked merit and was unjustified. *Miller*, 5:20-cv-01743 (N.D. Ohio), Order, R.290, PAGEID # 4022-4030. Judge Adams further ordered counsel to provide the names of the individuals who paid the bribes and what fact discovery has shown to date. *Id.* at PAGEID # 4030. The parties refused to provide the

8

information sought by Judge Adams' Order and on July 5, 2022, Judge Adams denied a joint motion by the Parties to dismiss the Northern District Action noting that principles of comity inherent in the first-to-file rule required that the Settlement also be presented for approval to the Northern District and that one glaring omission of the proposed settlement was the failure to obtain any compensation from FirstEnergy's senior executives who were highly compensated based upon the Company's bribery-enhanced performance and culpable in the Legislative Corruption Scandal. *Miller*, 5:20-cv-01743 (N.D. Ohio), Order and Decision, R.331, PAGEID # 4186-4190.

On May 9, 2022, Judge Marbley approved a March 11, 2022, motion for preliminary approval of the Settlement which expressly did not require approval by the Northern District. [Proposed] Preliminary Approval Order, R.170-14, Page ID # 2762-2770; Preliminary Approval Order, R.176, Page ID # 2853-2864. On May 16, 2022, a notice of settlement (the "Notice") with respect to the Southern District Action was published as an exhibit to a Form 8-K filed by FirstEnergy.[2] The Notice stated that the Settlement: (a) benefitted FirstEnergy by recovering $180 million from insurance carriers; (b) initiated substantial corporate governance reforms; and (c) contained a carve-out provision allowing FirstEnergy to continue to pursue

---

[2]    *See* https://www.sec.gov/ix?doc=/Archives/edgar/data/0001031296/000103129622000023/fe-20220516.htm.

claims against Charles Jones, Michael Dowling ("Dowling"), and Dennis Chack ("Chack," and with Jones and Dowling the "Terminated Executives") – each of whom was fired for violating FirstEnergy's policies and code of conduct. The Notice referred to https://firstenergyderivativesettlement.com, where more information concerning the Settlement could be found.

> **F.    The Settlement Proceedings in the Southern District Reveal a Previously Undisclosed Fact Concerning the Settlement's True Monetary Benefit to FirstEnergy**

On July 7, 2022, Plaintiffs moved for final approval of the Settlement and for attorneys' fees in the Southern District. Settlement Approval Motion, R.179, Page ID # 2870-2941. On July 21, 2022, Augenbaum objected to the Settlement, *inter alia*, questioning whether the $180 million constituted a true benefit to the Company because of the pendency of other claims against FirstEnergy covered by the same insurance policies. Augenbaum's Objection, R.181, Page ID # 4019-4035. Later that day, the SLC filed a response objecting to Plaintiffs' motion for approval claiming the centerpiece of the Settlement was the corporate governance reforms which had been primarily achieved by the SLC, such that the attorneys' fees sought were too high. SLC's Objection, R.182, Page ID # 4057-4067. On July 28, 2022, Plaintiffs disclosed for the first time in a footnote of their reply brief in support of settlement approval that that the Settlement only includes "$72.28 million of insurance that would not have otherwise been available to FirstEnergy." Plaintiffs' Reply, R.186,

Page ID # 4113 at n.6. Prior to that time, Plaintiffs and FirstEnergy failed to state either in the Notice or in their motion papers seeking approval of the Settlement that $107,715,952.64 of the recovery would be available to resolve other pending claims against the Company, including those made in *In re FirstEnergy Corp. Sec. Litig.*, Case No. 20-cv-03785-ALM-KAJ (S.D. Ohio) (and all consolidated cases) (collectively, the "Securities Fraud Action" or "*SFA*"). *Id.*

## G. The Southern District Approves the Settlement Overruling Augenbaum's Objections

On August 4, 2022, the Southern District held a fairness hearing. 2:20-cv-05876-ALM-KAJ, R.38, PAGEID # 1368-1464. On August 15, 2022, Judge Adams announced that he intended to appoint Markovits, Stock & Demarco, LLC ("MSD") and Abraham, Fruchter & Twersky, LLC ("AFT") as new co-lead counsel in the Northern District Action based upon, *inter alia*, their representing Augenbaum in objecting to the Settlement. *Miller*, 5:20-cv-01743 (N.D. Ohio), Order, R.345, PAGEID # 4358-4360. On August 23, 2022, the Southern District approved the Settlement over Augenbaum objections and addressed Judge Adams' objection by stating that the Settlement obtained a substantial recovery and held out the opportunity for additional recovery from individual defendants. Order of Final Settlement Approval, R.195, Page ID # 5049-5052. On August 24, 2022, the parties to the Northern District Action jointly moved to dismiss that case with prejudice. *Miller*, 5:20-cv-01743 (N.D. Ohio), Joint Motion, R.353, PAGEID # 4441-4463.

11

On September 20, 2022, Augenbaum moved for reconsideration of the approval of the Settlement noting, among other things, that FirstEnergy's recent submissions made to the Northern District clarified that the Company believes the Settlement extinguishes all breach of fiduciary claims against the Terminated Executives and, instead, limits the Company to a clawback provision in an agreement to which the Terminated Executives are not a party. *See* Augenbaum's Objection, R.197-1, Page ID # 5098-5099 (citing *Miller*, 5:20-cv-01743 (N.D. Ohio), Opposition of SLC, R.359, PAGEID # 5012-5015).[3] Augenbaum explained the disclosures in the Walker Declaration made the Southern District's finding that there existed a substantial likelihood of recovery from the Terminated Executives

---

[3]    On September 8, 2022, Christine L. Walker ("Walker"), Senior Vice President and Chief Human Resources Officer of FirstEnergy submitted a declaration (the "Walker Declaration") in the Northern District stating that any claim for recovery of incentive compensation from the Terminated Executives is limited by Company's Executive Compensation Recoupment Policy (the "Recoupment Policy") and ***does not include any legal or equitable claim including those for the breach of fiduciary duty claims asserted in this action***. *Miller*, 5:20-cv-01743 (N.D. Ohio), Walker Declaration, R.359-1, PAGEID # 5023-5027  (refiled as Declaration, Exhibits, R.197-2, PAGEID # 5840-5849) at p.5. Walker stated that the Company has taken the position that any amounts payable to Defendants Jones and Chack pursuant to the FirstEnergy Amended and Restated Executive Deferred Compensation Plan (the "EDCP") will be set off against any claims the Company is making pursuant to the Recoupment Policy. Walker Decl. ¶¶7, 11. Walker, however, failed to quantify the amounts at issue under the EDCP or whether they are included in the $56 million of incentive compensation previously reported to have been received by the Terminated Executives. Walker also states that "the Company has the option to pursue recovery" of the amounts due under the Recoupment Policy but fails to state whether any such action has been commenced (*id.* ¶¶8, 12) and stating that a tolling agreement has been entered into with Dowling. *Id*. at ¶9.

mistaken. Augenbaum also challenged the adequacy of the Notice under the Due Process clause of the U.S. Constitution. *See* Augenbaum's Objection, R.197-1, Page ID # 5093-5095. On May 22, 2023, the District Court denied Augenbaum's motion for reconsideration. Opinion & Order, R.205, PAGEID #6147-6154.

### H.    Other Relevant Developments

On January 23, 2023, Householder's criminal trial opened before Senior U.S. District Judge Timothy S. Black. On March 9, 2023, Householder was sentenced to twenty years in prison after being found guilty of violating the racketeering statute through honest services wire fraud, receipt of millions of dollars in bribes and money laundering. *See USA v. Householder,* Docket No. 1:20-cr-00077 (S.D. Ohio Jul 30, 2020).

On March 30, 2023, Judge Marbley certified a class of investors pursuing claims arising under Section 10(b) of the Securities Exchange Act of 1934 relating to the failure to disclose the Bribery Scheme. *See In re FirstEnergy Corp. Sec. Litig.*, Case No. 20-cv-03785-ALM-KAJ (S.D. Ohio), Class Certification Order, R.435, PAGEID # 9781-9831. In seeking interlocutory review of the class certification order, FirstEnergy stated that it was exposed to billions of dollars in potential liability from the securities fraud class action. *See In re: FirstEnergy Corporation*, Docket No. 23-00303, Petition for Leave to Appeal, R.1-2 (6th Cir. Apr. 14, 2023).

## SUMMARY OF ARGUMENT

The shareholder derivative action brought on behalf of FirstEnergy was first filed in the Northern District and simultaneously litigated in both the Northern District and Southern Districts of Ohio. The Parties acted improperly by purposefully avoiding the jurisdiction of the Northen District in seeking approval of a proposed settlement (the "Settlement"), which, standing alone, serves as a sufficient bases for vacating the terms of the Settlement. In addition, the concerns Judge Adams raised with respect to the timing and terms of the Settlement allow this Court to review the fairness of the Settlement on a *de novo* basis because any unique insights into the facts of the case which motivated Judge Marbley's approval of the Settlement are negated by Judge Adams disapproval based upon, *inter alia*, the lack of meaningful merits discovery and the failure to obtain any cash recovery directly from seniors executives.

The Southern District as well as FirstEnergy's shareholders were sold a fictitious bill of goods. The purported $180 million benefit to the Company is wildly exaggerated with subsequent filings in response to Augenbaum's objection demonstrating that the maximum monetary benefit of the Settlement is, in fact, $72.28 million. Similarly, the releases granted in the Settlement effectively slanted the playing field in favor of former senior executives and directors, with the Company sacrificing the high ground. These facts demonstrate the premises

underlying the Southern District's approval of the Settlement were mistaken and that its award of attorneys' fees was improperly inflated based upon the fictitious nature of most of the purported benefit. Those belated disclosure also support vacating the Settlement based upon its terms not having been properly disclosed in the Notice, thereby violating the Due Process requirements of the U.S. Constitution.

## **ARGUMENT**

## I.    THIS COURT SHOULD ANALYZE THE DISTRICT COURT'S APPROVAL OF THE SETTLEMENT UNDER A *DE NOVO* STANDARD

The premise of the abuse of discretion standard as applied to factual determinations including the reasonableness of a proposed settlement is that "[b]y reason of settlement conferences and other pretrial activities, the district court may have insights not conveyed by the record[.]" *Pierce v. Underwood*, 487 U.S. 552, 560 (1988); *see also In re Dry Max Pampers Litig.*, 724 F.3d 713, 717 (6th Cir. 2013). Here, however, prior to the Southern District approving the Settlement, the U.S. District Judge in the Northern District articulated on the record specific reasons why he believed he would disapprove of the Settlement if it were presented to him for review. *See* Argument §II, *infra*.

This Appeal, therefore, represents the seemingly unique setting of two separate U.S. District Court Judges disagreeing over whether the Settlement should have been approved. This Court should not favor the insight of one U.S. District

Court Judge over that of another U.S. District Court Judge and, as a result, should apply a *de novo* standard to determining whether the Settlement is fair, reasonable and adequate. The same *de novo* standard should apply to whether the Notice satisfied the requirements of the Federal Rules of Civil Procedure and the Constitution's Due Process Clause, both of which involve an issue of law subject to a *de novo* review. *See, e.g.*, *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008).

## II.   THE SETTLEMENT SHOULD BE VACATED BECAUSE THE PARTIES DELIBERATELY REFUSED TO SEEK APPROVAL FROM THE NORTHERN DISTRICT

The first of these shareholder derivative actions brought on behalf of FirstEnergy was filed in the Northern District. The action was also actively litigated in the Northern District. Fed R. Civ. P. 23.1(c), therefore, required that Judge Adams also be allowed to pass judgment as to whether the Settlement should be approved. *Miller*, 5:20-cv-01743 (N.D. Ohio), Order and Decision, R.331, PAGEID # 4186-4190. In addition, the first-filed rule also required that the action be presented for settlement to Judge Adams especially given that the matter had been actively litigated in the Northern District. Judge Adams succinctly and persuasively explained why the parties' effort to avoid his jurisdiction in seeking approval of the Settlement should be rejected and Augenbaum respectfully refers this Court to that July 5, 2022 Order and Decision (*Miller*, 5:20-cv-01743 (N.D. Ohio), Order and Decision, R.331, PAGEID # 4186-4190) which states as follows:

16

Pending before the Court is the parties' joint motion to dismiss these proceedings without prejudice while they seek approval of a settlement before the Southern District of Ohio in Case Number 2:20-cv-4813. For the reasons stated below, the motion is denied.

Initially, the Court notes that Fed. R. Civ. P. 23.1(c) provides as follows:

> A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders.

The parties have given no indication that notice was provided of their proposed dismissal to shareholders, nor did they propose any method of providing such notice. For that reason alone, the motion is denied.[4] However, there are additional reasons that support this Court's conclusion that dismissal is inappropriate. In their motion, the parties note:

> To the extent there are questions about the adequacy or fairness of the Settlement, the proceeding in the Southern District Court provides the forum for such concerns to be raised and reviewed in an orderly process.

Doc. 320-1 at 13. In so doing, they have yet again failed to explain why the Court should abandon the first-to-file rule. The Sixth Circuit has explained the rule as follows:

> The first-to-file rule is a well-established doctrine that encourages comity among federal courts of equal rank. The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment. The Sixth Circuit has referenced the rule without discussing it by name,

---

[4]     The parties suggest in a footnote that no notice should be required. However, they offer no legal support for their conclusory assertion that the plain language of Rule 23.1 should be ignored.

while other circuits have explicitly applied it. District courts have the discretion to dispense with the first-to-file rule where equity so demands. A plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing. Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping.

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001)(citations and quotations omitted).

In examining the reasons to discard the first-to-file rule, none are present in this litigation. There are no allegations of extraordinary circumstances, inequitable conduct, bad faith, or forum shopping as it relates to the matter before this Court. This matter was filed on August 7, 2020, and the Southern District derivative action was later filed on September 9, 2020. The ancillary state court proceedings are also located in the Summit County Court of Common Pleas – here in the Northern District of Ohio. Moreover, Akron serves as the situs of FirstEnergy's corporate headquarters. In other words, numerous factors beyond the file date support this District moving this matter forward to judgment. Instead, by all appearances, it is the parties seeking to have their settlement approved in the later-filed action that have engaged in forum shopping.[5]

From this Court's review, Plaintiffs were more than willing to litigate the matter before this Court when the undersigned mandated an expedited discovery schedule. When counsel for the shareholders was asked whether the mediation would include the Southern District of Ohio case, he responded: "Your Honor, the answer is yes and no. The mediation is independent of the Southern District or the Northern District. *But it was always our intent to do this in connection with Your Honor, okay.*" Doc. 235 at 29 (emphasis added). A review of the transcripts of proceedings before this Court reveals why the parties may desire to have their settlement reviewed by another District. In short,

---

[5]    At times, the parties seem to have argued that by virtue of the Southern District ruling on pretrial motions or overseeing other related securities actions that it is appropriate for the matter to be resolved there. However, no part of that reasoning provides a basis under existing law to dispense with the first-to-file rule.

this Court offered an honest assessment when the parties indicated a desire for early mediation. The Court indicated that it would be extraordinary if the parties could demonstrate that a settlement was fair and reasonable despite the following:

- incomplete written discovery

- no testimony under oath from any Defendant or other witness

- incomplete privilege logs detailing withheld documentation

- an incomplete forensic examination to identify possible missing communications contained on Defendant Charles Jones' personal electronic devices and

- an inadequate period to review and analyze the documents that were provided.

It is apparent from the parties' actions that the Court's candor caused the parties to seek approval of their settlement from another District. Given that counsel is permitted under the settlement to seek up to $48,600,000 in attorney fees, it is hardly surprising that the parties would seek out what they believe to be a more favorable forum.[6]

The parties also appear to take issue with the Court's expressed intent to appoint counsel if no existing counsel expresses a willingness to litigate this matter. In so doing, the parties again tout the size of their settlement asserting it to be one of the largest recoveries in a derivative action. In so doing, they ignore numerous key factors. First, as noted above, the recovery to FirstEnergy could be reduced by nearly $50 million if counsel seeks the maximum permitted under the settlement. Second, the parties own evidence suggests that the recovery of roughly $150 million pales in comparison to the losses caused by the bribery scheme at issue. When evaluating the proposed corporate governance reforms, Professor Jeffrey Gordon noted that bribery scheme "led to a

---

[6]    The Court notes that the Southern District has given no indication whatsoever that it would be a more favorable forum. It is solely the fact that this Court has expressed grave doubts about the process utilized by the parties that would give the parties the belief that any other forum would be more favorable.

criminal investigation, a Deferred Prosecution Agreement, the payment of a $230 million fine, numerous civil suits and class actions, and the loss of an estimated over $1 billion in shareholder value when the federal indictment was announced." Case No. 2:20CV4813, Doc. 170-5 at 11. In other words, a net recovery of $150 million would not only fail to cover the cost of solely the fine paid to the federal government, but it could also cover as little as 10% or less of the total loss caused by the bribery scheme.

While touting that the settlement and its reforms will restore the public's confidence in FirstEnergy, the parties ignore that the alleged wrongdoers will pay not a single cent to the settlement. Moreover, a recent audit by the Pennsylvania Public Utility Commission noted: "The Board elected not to use the contracted claw back provisions which could have recouped compensation paid during the years investigated." Audit at 63, available at https://www.puc.pa.gov/pcdocs/1748700.pdf (last visited 6/30/2022). In other words, despite an ability to seek compensation from those that allegedly perpetrated and benefited from the bribery scheme, FirstEnergy has declined to do so. This is true despite the fact that Defendant Charles Jones alone received roughly $55,207,422 over the course of the scheme. As such, all those facts directly undermine the parties' assertions about the enormity of their proposed settlement.

More importantly, the parties have attempted to evade any review by this Court of their settlement. Given that the concerns expressed above are known to the Court solely through public sources and without any discovery in this matter, the Court will not dismiss this matter without reviewing any proposed settlement.

IT IS SO ORDERED.

[signature block omitted]

## III. THE NOTICE FAILED TO COMPLY WITH DUE PROCESS REQUIREMENTS THEREBY PRECLUDING THE SETTLEMENT'S APPROVAL

The Federal Rules of Civil Procedure require that notice of a proposed settlement of a shareholder derivative action be provided to shareholders. *See* Fed.

R. Civ. P. 23.1(c). That requirement is grounded in the Due Process clause of the U.S. Constitution. *See, e.g., Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); Preliminary Approval Motion, R.170, PAGEID # 2430, 2458 (acknowledging notice must satisfy the requirements of Rule 23.1 and the requirements of due process). The Notice was, therefore, required to provide FirstEnergy shareholders with enough information to permit them to make a rational decision whether to object or seek to intervene in the settlement-approval process. *See* Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d §1839 & n.14 (citing cases). Ordinarily great detail need not be provided if the information relevant to a proposed settlement's fairness is otherwise publicly and easily available. *See, e.g.*, *Int'l Union, UAW v. Gen. Motors Corp.,* 497 F.3d 615, 630 (6th Cir. 2007).

Here, however, the Notice failed that very easy and basic test by failing to disclose that the purported $180 million settlement only consisted of "$72.28 million of insurance that would not have otherwise been available to FirstEnergy." Plaintiffs' Reply, R.186, Page ID # 4113 at n.6. This fact could not have been discovered by any FirstEnergy shareholder prior to its initial public disclosure in Plaintiffs' July 28, 2022 reply filing with the Southern District. More importantly, describing the Settlement as being worth $180 million when its terms deprived FirstEnergy of more than $107 million in insurance coverage which would otherwise be available to (and certainly used by) the Company is materially misleading. This

is particularly true since the Securities Fraud Action has survived a dismissal motion and presents the Company with potential liability of billions of dollars (*see In re FirstEnergy Corp. Sec. Litig.*, Case No. 20-cv-03785-ALM-KAJ (S.D. Ohio), Amended Complaint, R.72, PAGEID # 1550, ¶13) with FirstEnergy stating "that it is probable that it will incur a loss in connection with the resolution of" the Securities Fraud Action. *See* Memorandum in Support of Reconsideration, R.197-1, PAGEID # 5094, quoting SEC filing, R.197-2, PAGEID # 5935.

The Notice also deceptively states that "[t]he Settlement does not release any claims by the Company for recoupment of compensation from Defendants Jones, Dowling, or Chack, including such claims that the Company is pursuing or may pursue (which for avoidance of doubt Jones, Dowling, and Chack deny have any basis and reserve their right to oppose and defend against on any and all grounds available and to assert any related claims)." Notice at 13-14.[7] In truth and in fact, the SLC is seeking to release the breach of fiduciary duty claims asserted by Plaintiffs with prejudice and confine any claims which the Company has the "option" to bring to those made pursuant to the Recoupment Policy. The SLC's intent is further evidenced by the parties seeking to obtain a release of all the breach of fiduciary duty claims, including those asserted against the Terminated Executives, with

---

[7]     The Notice is available at https://firstenergyderivativesettlement.com/.

prejudice. *See Miller*, 5:20-cv-01743 (N.D. Ohio), Joint Motion, R.353, PAGEID # 4441-4463 (seeking to dismiss the Northern District Action with prejudice).

The SLC's contention that the Notice was adequate because it was technically correct in stating that the Settlement would result in Defendants' insurers paying $180 million to the Company (SLC's Opposition to Reconsideration, R.199, PAGEID # 6100) is in error because it is well-settled that even statements which are literally true can be deceptive because of the failure to disclose material facts. *See, e.g., Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 85 (2d Cir. 2021) ("[T]he law is well settled that so-called 'half-truths' – literally true statements that create a materially misleading impression – will support claims for securities fraud."); *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 491-92 (6th Cir. 2015) (recognizing courts "ask not only whether the statement is literally true but also whether the statement creates an impression that is false by, for example, impliedly asserting an objective fact that is false."). Here, that principle is implicated by the Notice's failure to disclose that almost $108 million of the Settlement Fund being paid would likely not benefit the Company because those payments reduced the insurance coverage available to FirstEnergy to cover substantial likely liability on other cases given the factual admissions of the DPA. *See* Objection to Settlement, R.181, PAGEID # 4029.

Due Process may not, as the SLC contends, require "perfect notice" (SLC's Opposition to Reconsideration, R.199, PAGEID # 6101), however, that did not give the parties the right to deceive the Company's shareholders through the failure to disclose material facts which necessarily interfere in their ability to come to their own conclusions about whether the Settlement was in the Company's best interests. *See, e.g.*, *Howell v. JBI, Inc.*, 298 F.R.D. 649, 661 (D. Nev. 2014) (rejecting a proposed notice that inaccurately described attorneys' fees to be sought and "fails to notify the Class that any amount, let alone 12.3% of the total amount offered to settle this case, will be used to pay administrative fees").

*In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985 (N.D. Ohio 2016), upon which the SLC relied below, is not to the contrary. In *Polyurethane* $9.25 million, or 6.1% of the $151.25 million settlement, was contingent on the outcome of separate litigation, although not disclosed in the notice, and that fact was disclosed in the settlement agreement made available on a specially designated website. Here, in contrast, the relevant information was *not* contained in the Settlement Agreement or in any other place until first disclosed by Plaintiffs in a footnote in their reply brief with the amount at issue being almost 60% of the Settlement Fund. *See, e.g.*, *In re Katrina Canal Breaches Litig.*, 628 F.3d 185 (5th Cir. 2010) (holding settlement notice failed to satisfy Due Process requirements because of, *inter alia*, a failure to disclose information regarding a likely *cy pres*

distribution). Notably, that reply was filed *after* the deadline to object to the settlement, and there is no reason to believe it was seen by any of the Company's stockholders that are not party to this appeal.

The SLC is also mistaken in contending that objections to the adequacy of the Notice were forfeited by only being raised in seeking reconsideration of the Court's approval of the Settlement. SLC's Opposition to Reconsideration, R.199, PAGEID # 6099. That argument lacks merit because it ignores that the facts were only first disclosed in a footnote in Plaintiffs' reply brief *after* the deadline for filing objections had passed – and 7 days before the fairness hearing – as confirmed by this Court striking another FirstEnergy shareholder's objection as having been untimely. *See* Plaintiffs' Reply in Support of Settlement, R.186, PAGEID # 4113 n.6; Order Striking Objection, R.190, PAGEID # 4808-4810. Augenbaum, therefore, did not have a reasonable opportunity to address the matter prior to the fairness hearing, making the motion for reconsideration the first reasonable opportunity to address the issue. *See, e.g.*, *Venters v. City of Delphi*, 123 F.3d 956, 968 (7th Cir. 1997) (reply filed on the eve of oral argument raising new issues "deprived [the opposing party] of any reasonable opportunity to address that defense."); *cf. Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 477 (6th Cir. 2007). Moreover, forfeiture is particularly inappropriate because the issue of Notice implicates Due Process concerns which, at

least in the criminal context, cannot be intentionally waived. *See, e.g., Class v. U.S.,* 138 S. Ct. 798, 807 (2018).[8]

## IV.    THE SETTLEMENT SHOULD NOT HAVE BEEN APPROVED

The first factor relied upon by the Southern District in approving the Settlement was a finding that there was no evidence of fraud or collusion. Order of Final Settlement Approval, R.195, Page ID # 5055-5056. However, the belated disclosure concerning only $72.28 million of the $180 million settlement fund being attributable to insurance that would not otherwise have been available to FirstEnergy – especially when combined with the concerted effort to avoid the jurisdiction of the Northern District – calls that conclusion into question because the Company signing on to that materially misleading presentation of the relevant facts relates directly to the issue of attorneys' fees.

Indeed, it is well-recognized that a risk exists in shareholder derivative litigation that "the lawyers might urge a [] settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *In re Dry Max*

---

[8]    Defendants separately contend that Augenbaum has waived any argument with respect to the adequacy of the Notice. Opposition to Reconsideration, R.198, PAGEID # 6081. Waiver exists only where there is an "intentional relinquishment or abandonment of a known right." *U.S. v. Olano,* 507 U.S. 725, 733 (1993). Here, Augenbaum did not intentionally abandon a challenge to the Notice meaning no waiver occurred. In fact, Augenbaum could not have waived a challenge to the lack of complete disclosure by objecting to the fact that the disclosure appeared incomplete.

*Pampers Litig.*, 724 F.3d at 718 (citations omitted). Traditionally that risk arises from the overvaluation of the benefit of corporate governance reforms. *See*, *e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) ("Precisely because the value of injunctive relief is difficult to quantify, its value is also easily manipulable by overreaching lawyers seeking to increase the value assigned to a common fund."). The same rationale supports extending the concept of collusion to exaggerating the monetary benefits of a proposed settlement where it is understood that the purported size of the monetary recovery serves as the basis for an attorney fee award.

Here, precisely such evidence of collusion exists with respect to claiming that the Settlement achieved a $180 million recovery given this Court's history in awarding fees based upon a percentage of the stated recovery. *See, e.g.*, Settlement Approval Motion, R.179, Page ID # 2926 (recognizing a percentage of the fund approach is the preferred method for awarding attorneys' fees in the Sixth Circuit and citing *Rikos v. Proctor & Gamble Co.*, 2018 WL 2009681, at *8 (S.D. Ohio Apr. 30, 2018), quoting *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011), and *Rudi v. Wexner*, 2022 WL 1682297, at *4 (S.D. Ohio May 16, 2022)). Any questionable feature of the fee provision, including exaggerating the amount of the common fund, requires greater scrutiny to ensure that it did not cause Plaintiffs' counsel to betray the interests of the representative

party on whose behalf the claim was being pursued. *See, e.g.*, *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 949 (9th Cir. 2011).[9]

Plaintiffs' counsel, knowing that a large fee representing a very generous multiple to reported time (without evidence of Plaintiffs exercising billing discretion concerning potential duplicate billing created by effectively the same case pending in three separate jurisdictions) was available, had every incentive to take the path of least resistance for the highest possible attorneys' fees rather than do the additional heavy lifting of pursuing disputed discovery issues and taking depositions. *See Miller*, 5:20-cv-01743 (N.D. Ohio), Opinion and Decision, R.274, PAGEID # 3904-3907; *accord* Order of Final Settlement Approval, R.195, Page ID # 5057 (recognizing that "more discovery would have been desirable"). This includes, for example, looking the other way with respect to the release of claims against defendant Strah, then FirstEnergy's CEO, even as defendant Jones was pointing the finger at him in the Securities Fraud Action and the Office of the Ohio Consumer's

---

[9]     The same is true with respect to each of the Plaintiffs seeking an incentive fee award of $10,000. *See* Settlement Approval Motion, R.179, Page ID # 2936-2937. Accepting such a preferential payment "provide[s] a *disincentive*" for Plaintiffs "to care about the adequacy of the relief afforded" and, instead, encouraged them "to compromise the interest of the class for personal gain." *Dry Max Pampers*, 724 F.3d at 722; *see also In re UnumProvident Corp. Deriv. Litig.*, 2010 WL 289179, at *10 (E.D. Tenn. Jan. 20, 2010) (disapproving incentive award to plaintiff in a shareholder derivative action because "the possibility of incentive awards could put named plaintiffs in a different position than the rest of the shareholders and could interfere with their ability to judge the settlement's fairness.").

Counsel (the "OCC") was doing the same in *In the Matter of the Ohio Edison Company, the Cleveland Electric Illuminating Company, and the Toledo Edison Company's Compliance with R.C. 4928.17 and the Ohio Adm. Code Chapter 4901:1-37,* Case No. 17-974-EL-UNC (before the Public Utilities Commission of Ohio ("PUCO")) (the "Ratepayer Action"). *See* Memorandum in Support of Reconsideration, R.197-1, PAGEID # 5091-5093.

Similarly, although shareholder derivative actions are undoubtedly complex (*see* Order of Final Settlement Approval, R.195, Page ID # 5056), that does not mean that each aspect of the case is complex. Thus, for example, proving the facts related to Strah's knowledge or derogation of his duties as then-CFO – as Jones ironically seems to be attempting to do in the Securities Fraud Action and the OCC is doing in the Ratepayer Action – is not complex but, instead, within the wheelhouse of almost every lawyer litigating cases with disputed issues of fact. Learning the truth concerning the involvement of Strah and other former FirstEnergy officers and directors also implicates the public interest (*see* Order of Final Settlement Approval, R.195, Page ID # 5060) as well as FirstEnergy's interest in not having a CEO directly implicated in the wrongful conduct at issue in this action lead the Company, as Strah was doing at the time of Settlement.

The amount of discovery (Order of Final Settlement Approval, R.195, Page ID # 5056-5057) is, therefore, plainly lacking, at the time of Settlement, which could

be explained by the prospect of a lucrative attorney fee award, which in this case amounted to $36 million, representing a 3.54 multiple of purported lodestar. Order of Final Settlement Approval, R.195, Page ID # 5061. That the SLC sought to limit the attorney fee award to $27 million (SLC's Objection, R.182, Page ID # 4057-4067) matters little given that also represents a very lucrative attorney fee award based upon a reported total lodestar of $11.36 million (Settlement Approval Motion, R.179, Page ID # 2933) with the Record showing no de-duplication of effort across multiple cases in three separate jurisdictions.

These are concerns that cannot be washed away through the presence of an independent mediator declaring that the mediation process was "hard fought." Order of Final Settlement Approval, R.195, Page ID # 5056 (quoting Declaration, R.179-5, PAGEID # 3079, ¶12). Instead, the paragraph of the Phillips Declaration quoted by the Southern District Court is so vague and lacking in detail as to make it a mere boilerplate representation entitled to no meaningful weight. Indeed, a proposed settlement of a shareholder derivative action negotiated utilizing the very same mediator through a process that was also represented to have been "hard fought" was very recently rejected another U.S. District Court Judge as "inadequate." *See* Exhibits, R.197-2, PAGEID #  6044-6045, 6076-6079.

30

## V.    NEWLY REVEALED FACTS FURTHER DEMONSTRATE THAT THE SETTLEMENT SHOULD NOT HAVE BEEN APPROVED

Proceedings in the Securities Fraud Action and the Ratepayer Action involved discovery largely conducted outside of public view. However, the limited discovery which has emerged through random motions to compel in those actions as well as through filings in the Northern District Action demonstrate that the Southern District was sold a bill of goods in the Settlement approval process failing to reveal material facts relevant to the Court's analysis. Those facts demonstrate that the Settlement – which includes a broad release of claims – should have been rejected.

### A.    The Court's Finding of Another Potential Major Recovery from the Terminated Executives is Inconsistent with Facts the SLC Belatedly Disclosed

Counts II and III of the operative complaint sought to recover the Officer Defendants' compensation and other damages the Officer Defendants caused the Company pursuant to the Company's well-pled equitable claims for breaches of fiduciary duties and for unjust enrichment. *See* Consolidated Complaint, R.75, PAGEID # 996-997 & 1001, ¶¶312-22 & Prayer F-G (seeking restitution and disgorgement of all compensation all Defendants obtained from FirstEnergy). Jones and Dowling are "Officer Defendants" (*id*. ¶40.) while Chack is named as an Officer Defendant in the Northern District Action (*see Miller*, 5:20-cv-01743 (N.D. Ohio), Intervenors' Complaint, R.75, PAGEID # 1569, 1572 at ¶¶35, 42) causing the Settlement to implicate claims brought against Chack as well.

31

The Southern District opined that, post-settlement, "a second major recovery source — the compensation paid to Defendants Jones, Dowling, and Check — remains available for the Company to pursue via salary clawback claims." Order of Final Settlement Approval, R.195, Page ID # 5050. However, it is now clear based upon the Walker Declaration that the Company has no intention of pursuing any claims for breach of fiduciary duty against the Terminated Executives as the form of Order submitted to the Northern District was with prejudice as to all claims asserted in this action. *Miller*, 5:20-cv-01743 (N.D. Ohio), [Proposed] Order, R.353-3, PAGEID # 4508. Moving to dismiss claims with prejudice is antithetical to any future prosecution of those claims. In addition, the Walker Declaration disclosed that FirstEnergy is foregoing prosecuting potential claims while limiting any potential recovery to the Recoupment Policy which the Company is defensively seeking to offset against claims the Terminated Executives might have received pursuant to the EDCP. Augenbaum's issue, to be clear, includes that the Terminated Executives retained any claims against FirstEnergy after causing the Company billions of dollars in damages while the Company handcuffed itself, limiting its claims against the Terminated Executives.

Also, left unsaid by the SLC (or any party) in prior submissions to the Court is that the claims are, in fact, *not* being actively pursued by the Company, with FirstEnergy only retaining the "option" to pursue the claims and seemingly only

seeking the EDCP benefits. The amount of those EDCP benefits and whether those amounts were included in the $56 million of incentive compensation subject to disgorgement are unknown based upon the record the SLC (and Plaintiffs) have placed before this Court. In other words, it is highly doubtful that there will be any second major recovery from the Recoupment Policy claims which the Company may or may not pursue, and which the Company is seeking to have dismissed with prejudice.

### B.    The Parties' Failed to Inform This Court of Facts Relevant to the Claims Asserted Against Strah Released in the Settlement

Plaintiffs contended the release of claims is justified because of the difficulty of proceeding with oversight claims, a position which the Southern District ultimately adopted. *See* Settlement Approval Motion, R.179, Page ID # 2917, 2921-22; Order of Final Settlement Approval, R.195, Page ID # 5057-5058. The SLC remained silent on the issues limiting its objection to the attorneys' fees sought by Plaintiffs' counsel. *See* SLC's Objection, R.182, Page ID # 4057-4067.

That analysis, however, was clearly flawed as it relates to the claims asserted against Strah who was the Company's CFO at the time of the relevant wrongdoing and its CEO at the time of the Settlement. In addition, the emails later made public by the OCC in the Ratepayer Case are sufficiently damning to evidence Strah's knowledge of and participation in at least some of the same conduct which is the subject of the DPA. *See* News Article, R.197-2, PAGEID # 5128-5137. At the same

time, Jones is pointing his finger directly at Strah and suggesting that Strah was informed of even more of the underlying conduct which is the subject of the DPA. *In re FirstEnergy Corp. Sec. Litig.*, Case No. 20-cv-03785-ALM-KAJ (S.D. Ohio), Motion to Compen, R.319, PAGEID # 6786-6810; *In re FirstEnergy Corp. Sec. Litig.*, Case No. 20-cv-03785-ALM-KAJ (S.D. Ohio), Opinion and Order, R.333, PAGEID # 7122-7131. Strah's abrupt decision to "retire" and the Company's decision not to make any severance payments to Strah (News Article, R.197-2, PAGEID # 5139-5146) further suggest Strah's culpability in this Action is real.

Nonetheless, the Settlement effectively gives Strah a free pass. Thus, although Strah may have relinquished his rights to certain severance payments, he still gets to keep all his past incentive payments and not to have account for any damages his actions caused FirstEnergy. This despite the claims against Strah ***not*** being ones for oversight but, instead, for direct collusion in the wrongful conduct and do ***not*** involve "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." Order of Final Settlement Approval, R.195, Page ID # 5058 (quoting *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996)).

## VI.  ANY ATTORNEYS' FEES AWARDED SHOULD BE REDUCED TO REFLECT THE ACTUAL BENEFITS ACHIEVED

Requests for attorneys' fees are evaluated using the six factors set forth in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). The first

*Ramey* factor, "the value of the benefit rendered to the corporation or its stockholders," is "widely regard" as being "the most important" of the *Ramey* factors. *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 764 (S.D. Ohio 2007).

Here, the benefit to FirstEnergy consists of two components.   The first component is corporate governance reforms primarily achieved by the SLC. *See* p.13, *supra* (citing SLC's Objection, R.182, Page ID # 4057-4067).   The second component is the inflated headline number.  *See* p.13, *supra* (citing Plaintiffs' Reply, R.186, Page ID # 4113 at n.6).  As a result, the financial benefit to the Company from the Settlement as approved has not been shown – assuming *arguendo* that Plaintiffs' statement in their reply brief is sufficient to support any showing – to be any more than $72.28 million. It is also unclear whether even that amount can be considered a true benefit or simply the insurance carrier paying the defense costs consistent with its contractual obligations. The Southern District Court fixed 20% of the benefit as a reasonable fee in this action. *See* Order of Final Settlement Approval, R.195, Page ID # 5068. As a result, the attorneys' fees should be reduced to no more than $14,456,809.47 (20% of $72,284,047.36) rather than the $36 million previously awarded – a difference of more than $21,500,000.00 – even assuming *arguendo* that this Court does not vacate the approval of the Settlement on the merits.

## **CONCLUSION**

Therefore, for all the reasons stated above, this Court should vacate approval of the Settlement or, alternatively, remand this case with the instructions to the District Court to engage in a more thorough analysis of the actual monetary benefits of the Settlement.

Dated: September 14, 2023

/s/ Jeffrey S. Abraham
Jeffrey S. Abraham
Michael J. Klein
**ABRAHAM, FRUCHTER &**
    **TWERSKY, LLP**
450 Seventh Avenue, 38th Floor
New York, NY 10123
(212) 279-5050 – Telephone
(212) 279-3655 – Facsimile
E-mail: jabraham@aftlaw.com
E-mail: mklein@aftlaw.com

/s/ W. B. Markovits
W. B. Markovits (0018514)
**MARKOVITS, STOCK &**
    **DEMARCO, LLC**
3825 Edwards Road, Suite 650
Cincinnati, Ohio 45209
(513) 651-3700 – Telephone
(513) 665-0219 – Facsimile
E-mail: BMarkovits@msdlegal.com

*Counsel for Appellant Todd Augenbaum*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,755 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word in 14-point Times New Roman.

<u>s/ *Jeffrey S. Abraham*</u>          <u>September 14, 2023</u>
Jeffrey S. Abraham          Date
*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I certify that on this the 14th day of September, 2023, pursuant to 6 Cir. R.

25, I caused the foregoing to be served electronically on all counsel of record

through the ECF System:

BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
Jeroen van Kwawegen
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Jeroen@blbglaw.com

*Co-Lead Counsel for Lead Plaintiffs in
Southern District Action and counsel
for Plaintiff-Intervenors in the
Northern District Action*

DEBEVOISE & PLIMPTON LLP
Maeve O'Connor
John Gleeson
Susan Reagan Gittes
919 Third Avenue
New York, NY 10022
Telephone: 212-909-6000
mloconnor@debevoise.com
jgleeson@debevoise.com
srgittes@debevoise.com

*Counsel for the Special Litigation
Committee of the Board of Directors of
Nominal Defendant FirstEnergy and
counsel to Nominal Defendant
FirstEnergy*

Thomas Curry
1000 N. West Street
Suite 1200, Office 1265
Wilmington, DE 19801
Telephone: (302) 485-0480
tcurry@saxenawhite.com

Co-Lead Counsel for lead Plaintiffs in
Southern District Action and counsel
for Plaintiff-Intervenors in the
Northern District Action

Geoffrey J. Ritts
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
gjritts@jonesday.com

--and—

BAKER & HOSTETLER LLP
Daniel R. Warren
Carole S. Rendon
Douglas L. Shively
Jeremy Dunnaback
Rachael L. Israel
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
dwarren@bakerlaw.com
crendon@bakerlaw.com
dshively@bakerlaw.com
jdunnaback@bakerlaw.com
risrael@bakerlaw.com

Attorneys for Defendant Charles E.
Jones

LAW OFFICES OF JOHN C.
CAMILLUS LLC
John C. Camillus
P.O. Box 141410
Columbus, OH 43214
Telephone: (614) 992-1000
jcamillus@camilluslaw.com

Liaison Counsel for Co-Lead Plaintiffs
in Southern District Action and counsel
for Plaintiff-Intervenors in the
Northern District

Marjorie P. Duffy
Jordan M. Baumann
325 John H. McConnell Boulevard, Ste
600
Columbus, OH 43215
Telephone: (614) 469-3939
Facsimile: (614) 461-4198
mpduffy@jonesday.com
jbaurnann@jonesday.com

Attorneys for Defendants Michael J.
Anderson, Steven J. Demetriou, Julia L.
Johnson, Donald T. Mischief, Thomas
N. Mitchell, James F. O'Neill,
Christopher D. Pappas, Sandra Pianalto,
Luis A. Reyes, Leslie M. Turner, Steven
E. Strah, K. Jon Taylor, Samuel L.
Belcher, Bennett L. Gaines, Christine L.
Walker, Gary Benz, Jason J. Lisowski,
Irene M. Prezelj, Paul T. Addison,
Jerry-Sue Thornton, William T Cottle,
and George M. Smart

COHEN MILSTEIN SELLERS &
TOLL PLLC
Molly J. Bowen
1100 New York Ave. NW, Fifth Floor
Washington, D.C. 20005
Telephone: (202) 408-4600
mbowen@cohenmilstein.com

Counsel for Additional Plaintiff
Massachusetts Laborers Pension Fund
in Southern District Action and in the
Northern District Action

39

WALTER I HAVERFIELD LLP
Ralph E. Cascarilla
Alexandra Victoria Dattilo
1301 E. Ninth Street, Suite 3500
Cleveland, OH 44114
Telephone: (216) 781-1212
Facsimile: (216) 575-0911
rcascarilla@walterhav.com
adattilo@walterhav.com

Attorney for Defendant Justin Biltz

TUCKER ELLIS LLP
John F. McCaffrey
John A. Favret, III
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone: (216) 592-5000
Facsimile: (216) 592-5009 Email:
john.mccaffrey@tuckerellis.com
john.favret@tuckerellis.com

Attorneys for Defendant Michael J
Dowling

s/ *Jeffrey S. Abraham*
Jeffrey S. Abraham
*Counsel for Appellant*

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| R No. | Description | PAGEID # |
|---|---|---|
| 38 | Transcript of Fairness Hearing (docketed in 2:20-cv-05876-ALM-KAJ) | 1368-1464 |
| 59 | Opinion & Order | 792-800 |
| 75 | Consolidated Verified Shareholder Derivative Complaint | 881-1003 |
| 93 | Opinion & Order | 1280-1312 |
| 170 | Preliminary Approval Motion | 2426-2463 |
| 179 | Plaintiffs' Motion for Final Approval of Settlement, an Award of Attorneys' Fees and Expenses, and Plaintiff Service Awards | 2870-2941 |
| 179-1 – 179-40 | Transmittal Declaration of John C. Camillus (with Exhibits) | 2942-4015 |
| 181 – 181-4 | Todd Augenbaum's Objection to the Proposed Settlement (with exhibits) | 4019-4056 |
| 182 | Objection of the Special Litigation Committee of the Board of Directors of Nominal Defendant FirstEnergy Corp. (the "SLC") to Plaintiffs' Motion for Award of Attorneys' Fees | 4057-4067 |
| 185 | Response of the SLC to Todd Augenbaum's Objection to the Proposed Settlement | 4092-4096 |
| 186 | Plaintiffs' Reply in Further Support of Their Motion for Final Approval of Settlement, an Award of Attorneys' Fees and Expenses, and Plaintiff Service Awards | 4097-4132 |
| 190 | Order Striking Objection | 4808-4810 |
| 195 | Order of Final Settlement Approval | 5044-5073 |
| 196 | Final Judgment Approving Settlement and Order of Dismissal | 5074-5085 |
| 197 | Todd Augenbaum's Motion for Reconsideration | 5086-5087 |
| 197-1 | Memorandum of Law in Support of Todd Augenbaum's Motion for Reconsideration | 5088-5102 |
| 197-2 | Declaration of W.B. Markovits in Support of Todd Augenbaum's Motion for Reconsideration (with Exhibits) | 5103-6079 |
| 198 | Defendants' Opposition to Objector Augenbaum's Motion for Reconsideration | 6080-6091 |
| 199 | Opposition of the SLC to Todd Augenbaum's Motion for Reconsideration | 6092-6109 |

| R No. | Description | PAGEID # |
|---|---|---|
| 200 | Plaintiff's Response in Opposition to Todd Augenbaum's Motion for Reconsideration of the Court's Order of Final Settlement Approval and Final Judgment | 6110-6128 |
| 201 | Reply Memorandum in Support of Todd Augenbaum's Motion for Reconsideration | 6129-6140 |
| 205 | Opinion & Order | 6147-6154 |
| 206 | Notice of Appeal | 6155-6156 |